**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DIANA MARIE HERICKS,                                    Case No. 1:10-cv-900

        Plaintiff,                                           Barrett, J.
                                                        Bowman, M.J.
   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**REPORT AND RECOMMENDATION**

    Plaintiff Diana Marie Hericks filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled.   *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes.   As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

    Plaintiff applied for Disability Insurance Benefits ("DIB") and for Supplemental Social Security ("SSI") in December 2007, alleging disability due to a herniated disc and resulting back pain, with an onset date of November 1, 2003 (Tr. 131, 139). After Plaintiff's application was denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge  ("ALJ").  An evidentiary hearing was held on February 9, 2010, at which Plaintiff was represented by counsel.  At the hearing, Administrative Law Judge ("ALJ") Paul E. Yerian heard testimony from Plaintiff,

and from William Cody, an impartial vocational expert.  On March 17, 2010, the ALJ denied Plaintiff's application in a written decision, concluding that Plaintiff was not disabled.

The record on which the ALJ's decision was based reflects that Plaintiff was 42 years old at the time of the evidentiary hearing.  (Tr. 39).  She is insured for disability purposes only through December 31, 2008 (Tr. 47).

Plaintiff graduated from high school and completed a couple of years of college, taking art classes (Tr. 42).  Her work history reflects past relevant work baking, designing and decorating cookies for "Cookies by Design," as well as work as a print artist (Tr. 43-44, 161, 168).  Plaintiff testified that she gave birth to a daughter on July 8, 2003 and was still on maternity leave from her employment with Cookies by Design when she slipped on ice in January 2004 and became disabled.[1]  (Tr. 42, 45).  Plaintiff states that since her fall on the ice, she has reinjured her back "several times" from changing the vacuum cleaner bag, carrying heavy laundry, and raking leaves.  (Tr. 47, 162).  However, with the exception of periods of re-injury, she is able to dress and bathe herself, do laundry, and other house and yard work, as well as shop and drive.  (Tr. 182).  She complains that she is "unable to pick-up & carry my 60 lb. 5 yr old & hardly my 23 lb. 2 yr old,."  (Tr. 210), and that at times her back will be thrown out just by her "grabbing a gallon of milk."  (*Id*.).  She testified that in the last year, her back was re-injured on three occasions (Tr. 47).  Plaintiff cares for her 15 year old stepchild, for her older biological child (age six at the time of the hearing), and for a younger child (age

---

[1]There is some ambiguity in the record concerning the date of Plaintiff's allegedly disabling back injury.  She alleges an onset date of November 1, 2003, and testified she injured her back in January 2004.  However, in a disability application she asserted that she "slipped on ice 10/30/04" (Tr. 161) and in another document she refers to the date as October 2005 (Tr. 236).

three) while her husband is at work.  (Tr. 40).   However, in response to questions from her attorney, she testified that because her husband is self-employed, he can come home to assist her when necessary, and that she also obtains occasional assistance from relatives who live nearby.  (Tr. 63).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine and degenerative changes of the right acromioclavicular joint." (Tr. 24).  In addition to Plaintiff's severe impairments, the ALJ noted that Plaintiff had recently suffered a shoulder injury in an automobile accident, which was not expected to last for at least twelve continuous months.  The ALJ also noted evidence of a mood disorder not otherwise specified, which did not cause more than minimal limitations.  (Tr. 24). Neither the acute shoulder injury nor the mental impairment were deemed to be severe impairments.

`       The ALJ determined that none of Plaintiff's impairments alone, or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability.  (Tr. 25.). Rather, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC") to perform a range of sedentary work, with the additional limitations that she "cannot climb ladders or have frequent overhead reaching" and "also can have no frequent public contact."  (Tr. 25).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that even with these limitations, the Plaintiff would be able to return to her past relevant work as a print artist.  (Tr. 28).  Accordingly,

the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to either DIB or SSI.  (*Id.*).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues that the ALJ erred by failing to adopt the opinions of her treating physician, by concluding that Plaintiff can engage in sedentary work based in part upon Plaintiff's activities of daily living, and by discrediting Plaintiff's subjective complaints of disabling pain.

**II.  Analysis**

**A.  Judicial Standard of Review**

To be eligible for DIB or SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a

4

whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence

supports the ALJ's denial of benefits, then that finding must be affirmed, even if

substantial evidence also exists in the record to support a finding of disability.  *Felisky v.*

*Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because
> substantial evidence exists in the record to support a different conclusion .
> . . . The substantial evidence standard presupposes that there is a 'zone
> of choice' within which the Secretary may proceed without interference
> from the courts.  If the Secretary's decision is supported by substantial
> evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for benefits, the Social Security Agency is guided by

the following sequential benefits analysis: at Step 1, the Commissioner asks if the

claimant is still performing substantial gainful activity; at Step 2, the Commissioner

determines if one or more of the claimant's impairments are "severe;" at Step 3, the

Commissioner analyzes whether the claimant's impairments, singly or in combination,

meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner

determines whether or not the claimant can still perform his or her past relevant work;

and finally, at Step 5, if it is established that claimant can no longer perform his or her

past relevant work, the burden of proof shifts to the agency to determine whether a

significant number of other jobs which the claimant can perform exist in the national

economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir.

2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she

is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits

must present sufficient evidence to show that, during the relevant time period, he or she

suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

**1. Failure to Adopt Opinions of Plaintiff's Treating Physician**

Plaintiff first argues that the ALJ erred by failing to give controlling weight to the RFC and disability opinions of Plaintiff's primary care physician, Dr. Michael Jennings. The relevant regulation concerning the opinions of treating physicians, 20 C.F.R. §404.1527(d)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.*; *see also Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).

The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> . . . these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting 20 C.F.R. § 404.1527(d)(2)). Thus, the treating physician rule requires "the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakely v. Commissioner of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight.  Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996).  In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion. These factors include, but are not limited to: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. §404.1527(d)(2).  "[A] finding that a treating source medical opinion...is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p).

When the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so.  *Id.*; 20 C.F.R. §404.1527(d)(2). Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley*, 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96-2p.

Of course, not every opinion uttered by a treating physician is entitled to the same weight.  The determination of a claimant's RFC, like the determination of disability, is "reserved to the Commissioner." 20 C.F.R. §404.1527(e).   Where conclusions regarding a claimant's functional capacity are not substantiated by objective

evidence, the ALJ is not required to credit those conclusions.  *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994).

Dr. Jennings was Plaintiff's primary care physician from January 2004 through 2009.  Dr. Jennings provided several opinions to support a finding of disability prior to Plaintiff's last insured date of December 31, 2008.  He opined in March 2008 that Plaintiff is "unable to do any sustained activity secondary to pain" due to her degenerative disc disease.   (Tr. 262-264).  In a letter dated July 25, 2008, he stated that Plaintiff "has not had any significant improvement in her chronic pain issues, and for that reason continues to be unable to perform any sustained activity or job related function secondary to her chronic pain," a condition expected to last for "at least one full year."  (Tr. 265).  Finally, on June 15, 2009, Dr. Jennings wrote that Plaintiff's activities of daily living are "significantly impacted" due to her "significant degenerative disc disease in the lumbosacral spine area."   (Tr. 295).  Dr. Jennings attached an assessment of Plaintiff's functional abilities to the 2009 letter, in which he opined that Plaintiff could stand and/or walk for fewer than 2 hours in a day, could sit for fewer than 6 hours, and has other limitations that render her unable to work.  (Tr. 296-298).

The ALJ recognized Dr. Jennings as a treating physician, but declined to give his disability opinion and functional assessment controlling weight in this case, explaining that he was instead affording those opinions "little weight." The ALJ's explanation was brief and to the point:

> Dr. Jennings does not reference any objective evidence to support his conclusions, which are not supported by his own clinical findings.  There is nothing to indicate that the claimant is as limited as provided in this assessment.  Moreover, Dr. Jennings [sic] assessment that the claimant is unable to work is a conclusion that is reserved to the Commissioner....

(Tr. 27).

Plaintiff correctly points out that the ALJ mischaracterized the record when he stated that Dr. Jennings failed to reference to "any" objective evidence.  Dr. Jennings referred Plaintiff for an MRI scan of her lumbar spine in 2005, and he specifically cited "previous MRI scans [that] show significant degenerative disc disease" in support of his disability opinion.[2]  (Tr. 295).

Despite the misstatement by the ALJ, his analysis is supported by substantial evidence.  In fact, the July 27, 2005 MRI report referenced by Dr. Jennings shows mostly normal findings, with only "*mild* degenerative disc disease" and a "*mild* annular disc bulge" at L4-5 without spinal or foraminal stenosis at any level, rather than the "significant" disease stated by Dr. Jennings.  (Tr. 267-268).  A lumbar x-ray dated April 30, 2008 showed only mild narrowing at L5-S1 (Tr. 26).  A later MRI report of the right shoulder dated November 24, 2009 also shows no significant abnormalities (Tr. 328). Dr. Jennings never performed or referred Plaintiff for any functional tests, or provided other medically acceptable findings to support his opinions.  Thus, the record supports the ALJ's decision not to give controlling weight to Dr. Jennings' opinions on the basis that his opinions are not supported by the objective evidence in the record, which reflects only mild abnormalities.  *See Cutlip,* 25 F.3d at 287 (conclusory opinions of two treating physicians rejected where they were unsupported and contradicted by substantial contrary medical evidence); *Crouch v. Sec'y of Health & Human Servs.*, 909 F.2d 852 (6th Cir. 1990).

_____

[2]Dr. Jenning's reference to multiple MRI scans is clearly erroneous.  Only one scan showing disc disease appears in the record.  A second MRI scan of the shoulder only, following Plaintiff's recent automobile accident, does not show disc disease that finding and post-dates Dr. Jennings' opinion.

Plaintiff distinguishes *Crouch* on grounds that in this case, Plaintiff's disability claim was supported by a physician who had established a lengthy treatment relationship. However, the length of Dr. Jennings' treatment relationship fails to overcome the fact that his opinions simply were not well-supported and were not entitled to controlling weight.

Other substantial evidence in the record similarly undermines and is inconsistent with Dr. Jennings' opinions. Dr. Jennings briefly referred Plaintiff to a sports medicine doctor, Jeffrey Stambough, M.D. During his examination on September 19, 2005, Plaintiff reported that she was "generally feeling better," and he noted "relatively limited" clinical findings. (Tr. 232). Dr. Stambough believed Plaintiff's heavy smoking habit was a contributing factor to her disc disease, and advised her to quit. (Tr. 233). On April 14, 2008, Plaintiff drove herself to a psychological examination with Dr. Nancy Schmidtgoessling, where she reported that her typical day involves supervising her three children, playing with them, cooking, occasional vacuuming, and other light housework. She also reported grocery shopping and having contact with friends and family. She reported giving speeches for the Life Center Organ Donation Center, up to three times per month during busy times such as organ donation month. (Tr. 238-239). On April 30, 2008, examining consultant Dr. J. Bailey found a normal gait, with normal range of motion of the cervical spine and all extremities, and only a slight reduction in the range of motion of Plaintiff's dorsolumbar spine. She was also comfortable in both sitting and standing positions (Tr. 242-249). Bilateral straight leg raising was normal (Tr. 243). Muscle strength was also normal, with no atrophy, no neurological deficits and no clinical evidence of radicular pain. (Tr. 26, 243-44). On May 28, 2008, non-

examining consultant Dr. William Bolz concluded based upon a review of Plaintiff's records that the medical evidence was inconsistent with Plaintiff's subjective complaints. (Tr. 286-293). Dr. J. Gahman subsequently affirmed Dr. Bolz's opinion on October 3, 2008. (Tr. 285).

The ALJ's finding that Dr. Jennings' opinions were unsupported by his own clinical records also is supported by the administrative record. The ALJ ultimately found that Plaintiff could lift not more than 10 pounds frequently. Dr. Jennings' clinical records suggested that Plaintiff's back pain is aggravated by significantly heavier lifting. Reports dating from November 2004 reflect that Plaintiff reported pain that was "exacerbated by frequent lifting of [her] child," (Tr. 340) and care for her then-15-month-old which required a "fair amount of lifting, bending, stretching, etc., which aggravates her pain." (Tr. 346). Nevertheless, Plaintiff exhibited no spinal tenderness on exam, and treatment with prescribed pain medications was noted "to give her adequate relief of pain *except* through the night." (Tr. 346, italics added). On August 18, 2005, Dr. Jennings recorded Plaintiff's complaints of "severe pain primarily in the left lower lumbar region," that "at times" radiates into her sacral area. Yet, he also noted that Plaintiff's MRI did not show any nerve compression and that he found "no classic radicular symptoms. " (Tr. 342). Upon examination that day, she had only "mild tenderness" across her lumbosacral region." (*Id.*). In February 2009, Plaintiff reported that her pain was "significantly better" and "improved" on pain medication. (Tr. 334).

Plaintiff argues that the ALJ erred by failing to note that Dr. Jennings did find muscle spasm and tenderness at times. However, the records cited by Plaintiff, while handwritten and difficult to decipher, appear to reflect only diffuse and "mild" tenderness

and a reference to "myofascial pain syndrome" rather than to spasm. (*See* Tr. 332, 339, 340). In fact, most of Dr. Jennings' records contain no evidence of spasm. (*See, e.g.*, Tr. 342, 346). While it is true that consulting examiner Dr. Bailey noted some paravertebral muscle spasm, he also recorded mostly normal clinical findings with little functional impairment. (Tr. 243). Thus, the few references to muscle spasm do not invalidate the substantial evidence that supports the ALJ's analysis of the clinical record.

Plaintiff contends that the ALJ improperly rejected Dr. Jennings' opinions on grounds that another consulting physician (Dr. Bailey) reached a contrary conclusion as to Plaintiff's RFC. The Sixth Circuit has held that a failure to provide a reason for rejecting a treating physician's RFC finding *other* than citation to a consulting physician's differing RFC finding is error. *Hensley v. Astrue*, 573 F.3d 263, 266-267 (6th Cir. 2009). But that was not what the ALJ did in this case. Instead, the record reflects that the ALJ clearly focused on the lack of clinical, diagnostic, and objective findings as the expressed basis for rejecting Dr. Jennings' opinions. Although the consistency of a treating physician's opinion with the overall record (including with the opinions of examining consultants) may be considered, in this case the ALJ did not expressly refer to consulting opinions as a basis for rejecting Dr. Jennings' opinions.

Plaintiff further argues that, as in *Hensley*, the ALJ improperly came up with his own medical conclusions as to Plaintiff's functional capabilities by splitting the differences between the opinions of Dr. Jennings and the consulting state agency physicians. Plaintiff asserts that the ALJ failed to consider any of the relevant factors required by the regulatory framework, including "the length of treatment relationship and

12

the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source" in determining the appropriate weight to be given to the opinion.  *Id.*, citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

It is true that the ALJ did not entirely adopt the RFC opinions of either Dr. Jennings or of consulting physicians, who opined that Plaintiff could perform a broad range of medium level work.  The ALJ gave the latter opinions only "some weight." Despite concluding that the claimed severity of Plaintiff's pain level was not credible, the ALJ limited Plaintiff to sedentary work, rather than work at the medium exertional level, based upon the record as a whole including the "consistency of ...back complaints." (Tr. 28).  Given Plaintiff's testimony at the hearing (that she avoids heavy lifting of laundry and other more strenuous activities) and the referenced reports to her physician that her pain is exacerbated by heavy lifting of her child, the ALJ's assessment of Plaintiff's exertional level was supported by substantial evidence.  The fact that the ALJ did not entirely adopt either of the RFC opinions offered by treating and consulting physicians is not contrary to the Sixth Circuit's opinion in *Hensley*, because the ALJ's analysis explains the basis for his opinions.  After all, the determination of a claimant's RFC remains the province of the ALJ.  20 C.F.R. §404.1527(e).

In sum, the ALJ's reasons for rejecting the RFC and disability opinions of Dr. Jennings are supported by substantial evidence, including objective medical evidence, clinical records, and other opinions in the record.  While the ALJ's analysis was brief, review of the record confirms that the analysis was accurate and sufficient to comply

with the "good reasons" requirement. *See generally Cutlip*, 25 F.3d at 287 (treating physician opinions are "only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence."); *McCoy on Behalf of McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995)(ALJ reasonably discounted treating physician's opinion where claimant's subjective complaints were unsupported by objective findings).

### 2.  Alleged Error in Finding RFC to Perform Sedentary Work

Plaintiff further argues that the ALJ erred by concluding that she can perform sedentary work based upon her reported daily activities.  Plaintiff relies upon *Carradine v. Barnhart*, 360 F.3d 751 (6th Cir. 2004) to argue that the ALJ failed to consider the difference between "sporadic physical activities" and Plaintiff's ability to sustain full-time work.

The facts of *Carradine* are easily distinguishable from the facts of the present case.  Ms. Carradine had been diagnosed with a long list of ailments including degenerative disk disease, scoliosis, depression, fibromyalgia, and somatization disorder, and was in such severe pain that she sought aggressive treatment at emergency rooms and from at least thirteen doctors and specialists over a period of seven years.  She was prescribed narcotic and opiates including morphine, and underwent surgical implantation of a catheter and spinal-cord stimulator.  The primary error in that case was the ALJ's failure to "get beyond the discrepancy between Carradine's purely physical ailments, which although severe were not a plausible cause of disabling pain, and the pain to which Carradine testified."  *Id.* at 755.  Despite psychological evidence that Carradine suffered from somatization (physical pain of a

psychological origin), the ALJ improperly "failed to take seriously the possibility that the pain was indeed as severe as Carradine said but that its origin was psychological rather than physical."  *Id.*

The Sixth Circuit also criticized the ALJ's failure "to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day."  *Id.*  However, (and in marked contrast to this Plaintiff's testimony regarding her allegedly unrelenting level of pain), "Carradine does not claim to be in wracking pain every minute of the day."  As stated, the facts presented in *Carradine* provided much stronger support for her testimony of disabling pain than do the facts presented in this case.  In any event, ample Sixth Circuit case law as well as pertinent regulations permit an ALJ to consider a claimant's daily activity level when evaluating the credibility of subjective complaints, and this Court does not believe that *Carradine* implicitly overruled that body of case law in one fell swoop.

As other Sixth Circuit cases have stated, "[s]ubjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)(quoting 42 U.S.C. §423(d)(5)(A)).  In nearly all cases, an evaluation of a claimant's daily activities is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability.  *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392 ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 536 (6th Cir. 2001)(ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming

15

and making beds).  In any event, in addition to Plaintiff's reported daily activities, the ALJ carefully considered the clinical records and objective evidence, all of which failed to support Plaintiff's allegations of disabling pain.  This conclusion also supports rejection of Plaintiff's final assertion of error, that the ALJ failed to credit her subjective complaints of a disabling level of pain.

### 3. Credibility of Plaintiff's Reports of Pain

In assessing complaints of pain, an ALJ must review both objective medical evidence and other evidence.  20 C.F.R. §404.1529(c).  Plaintiff argues that the ALJ failed to properly evaluate her complaints, and wrongly discredited her complaints *solely* on the basis of allegedly insufficient objective evidence, without consideration of other relevant factors such as her use of pain medications and her testimony that she cannot perform normal housework and needs to lie down 4-5 times per day.  (Tr. 45, 62).

To the contrary, it is clear that the record reflects that the ALJ considered the record as a whole, including but not limited to objective and clinical records, Plaintiff's testimony, and reported daily activities, in assessing Plaintiff's subjective reports of incapacitating pain.  Ultimately, the ALJ determined that "[t]he claimant's testimony concerning the presence of incapacitating discomfort and associated functional limitations was not credible."  (Tr. 25).  The ALJ did find some of Plaintiff's general testimony to be "partially but not fully credible," but held that her testimony that she suffers from disabling level of pain was simply "not credible."  (Tr. 26-27).

The ALJ's credibility determination led both to his assessment of Plaintiff's RFC, in terms of his rejection of additional limitations due to Plaintiff's asserted pain level, and to his conclusion that Plaintiff was not disabled.  A disability claim can be supported by

a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003).  However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted).  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

On the facts presented, the ALJ found that Plaintiff's back impairment could be expected to cause "some degree" of her alleged symptoms, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" to the extent inconsistent with the RFC he determined.  (Tr. 26).

> The pivotal question is...whether those symptoms occur with such frequency, duration or severity as to reduce the claimant's residual functional capacity...or to preclude all work activity on a continuing and regular basis.  Regarding overall credibility, the evidence fails to document that the claimant has demonstrated most of the signs typically associated with chronic, severe pain, such as muscle atrophy, spasm, rigidity, or tremor.  There is no evidence of persistent neurological deficits, or signs of nerve root compromise.  Imaging studies have failed to reveal significant pathology in the spine.  Clinical examinations have not identified signs of inflammatory disease, nor is there evidence of other signs that might be

> expected in the presence of a truly debilitating impairment, such as bowel
> or bladder dysfunction.

(Tr. 26).  In addition, the ALJ noted that Plaintiff "has no problems using her hands," and that the objective evidence does not support any condition that could be expected "to produce back pain at the frequency/severity/duration described." (*Id*.).

Aside from the lack of supportive objective, clinical, or laboratory findings, as previously discussed, the ALJ found that Plaintiff's daily activity level was inconsistent with her complaints of disabling pain.  Plaintiff testified that "she drives three-to-four times a week, reads to her three year old, and does light household chores." (Tr. 26). The record reflects that Plaintiff also watches TV, attends PTA meetings, and stated that she can walk a half mile.   (Tr. 41, 55-58). The ALJ particularly noted the inconsistencies between Plaintiff's testimony concerning very limited activities reported at the evidentiary hearing, and her prior report to Dr. Schmidtgoessling concerning a broader scope of activities.  (Tr. 27).  For example, although she reported helping out with a volunteer organization to Dr. Schmidtgoessling, she denied that activity at the hearing. (Tr. 42, 56-57, 64).[3]  Plaintiff also reported to Dr. Schmidtgoessing that she attends activities at her daughter's school and enjoys baking.  (Tr. 239).

The ALJ found that Plaintiff's reports to Dr. Schmidtgoessing, which did not include any report that she had to lie down during the day, more accurately reflected her daily activity level.

> Although the claimant testified that she typically needs to lie down a lot
> throughout the day, this testimony is not credible because it does not
> appear that her back pain is severe enough from an objective standpoint
> to necessitate the need to lie down a lot throughout the day.  Moreover,

---

[3]Plaintiff also reported vacuuming, but denied that activity at the hearing.  (Tr. 54).

the claimant's work record is fair, at best, and it falls short of creating the
inference that she would be working if she could.

(Tr. 27).

In assessing the credibility of Plaintiff's complaints, the ALJ also noted that
Plaintiff has sought "fairly conservative" treatment that "has primarily consisted of
chiropractic intervention and prescribed medications." (Tr. 27). In fact, Plaintiff testified
she has never sought even chiropractic treatment for her back pain (Tr. 50),[4] has never
used a TENS unit (Tr. 51), has never been admitted to the hospital for treatment or
evaluation, has never been referred to a pain specialist or sought significant orthopaedic
treatment, has never been evaluated for or undergone surgery, and has never sought
emergency care (other than following a recent motor vehicle accident). (Tr. 27).

Plaintiff argues that the ALJ's reference to Plaintiff's conservative treatment
reflects error because "there is no regulatory requirement" that emergency room visits,
surgery, or inpatient evaluation or treatment are required in order to find disability.
However, Plaintiff's argument ignores the fact that a failure to seek aggressive
treatment for complaints of allegedly disabling back pain is a legitimate factor to be
considered in assessing the credibility of those complaints. *See* 20 C.F.R.
§404.1529(c)(3)(iv)-(v)(ALJ can consider medication and other treatment when
assessing credibility).

Alternatively, Plaintiff points out that she did try physical therapy; however, her
testimony references only brief "home" treatment shortly after her 2004 injury with
"home exercises" that she quickly discontinued as not helpful, and never resumed

---

[4]Plaintiff did seek chiropractic treatment for her recent shoulder injury.

again.  (Tr. 49-50).  There are no records from that treatment, and no record of physical therapy or more aggressive treatment since that time.

Plaintiff briefly argues that Dr. Jennings identified her as suffering from "myofascial pain syndrome" in November 2004 and December 2009, citing her poor response to pain medications.  (Tr. 373, 378).  In a conclusory sentence, Plaintiff faults the ALJ's failure to consider that diagnosis. Plaintiff also criticizes the ALJ's failure to discuss her poor response to pain medications.[5] (Doc. 11 at 16).  It is unclear whether Plaintiff presented this argument concerning her "myofascial pain syndrome" at the administrative level.  What is clear is that neither Dr. Jennings nor any other physician has included any documentation of testing or other clinical findings to support that diagnosis.  To the extent the argument has not been waived, therefore, it does not support reversal of the ALJ's decision in this case.

Plaintiff also points to her testimony that she aggravated her back injury performing simple tasks on three occasions in the year prior to the hearing, requiring her to lie on the couch for a week.  (Tr. 47).  However, the ALJ adequately considered this testimony when he assessed Plaintiff's credibility and testimony as a whole.

In sum, as other courts have noted, many people experience chronic pain that is less than disabling.  *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-231 (6th Cir. 1990)(affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not

---

[5]Dr. Jennings immediately began prescribing narcotic pain medications in 2004 based upon a finding that Plaintiff was "intolerant" of over-the-counter medications.  Plaintiff did not testify as to any limiting side effects from her medications, other than to one medication she only takes at night. (Tr. 53).

disabling).  The ALJ considered Plaintiff's back condition, including her pain complaints, to be limiting, but not disabling.   Plaintiff argues that the facts of *Blacha* are distinguishable, but the principles expressed in *Blacha* reiterated prior case law in confirming that "[m]ild degenerative arthritis is not expected to produce disabling pain." *Blacha*, 927 F.2d at 231 (citing *Sizemore v. Sec'y of Health and Human Servs.,* 865 F.2d 709, 713 (6th Cir. 1988) and *Duncan v. Sec'y of Health and Human Servs*., 801 F.2d 847, 853-854 (6th Cir. 1986).  Because substantial evidence supports the functional limitations found by the ALJ, his failure to include any additional limitations based upon Plaintiff's complaints of disabling pain does not constitute reversible error.  *See also Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994)("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.").

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole, and that this case be **CLOSED.**

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DIANA MARIE HERICKS,                                    Case No. 1:10-cv-900

        Plaintiff,                                    Barrett, J.
                                                        Bowman, M.J.
   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).